# UNITED STATES DISTRICT COURT
for the
District of Colorado

In the Matter of the Use of )
)
A Cell-Site Simulator to Identify Cellular Devices ) Case No. 17-sw-06495-NYW
In the Possession of and Being Used by )
Jose Valenzuela-Vargas )
)
)

## APPLICATION FOR A SEARCH WARRANT

I am a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached to and incorporated in this Application and Affidavit.

located in the ___State and___ District of ___Colorado___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached to and incorporated in this Application and Affidavit.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 §§ 841 and 846 | Conspiracy to Import and Distribute controlled substances; Distribution of Controlled Substances |

The application is based on these facts:

☑ Continued on the attached affidavit, which is incorporated by reference.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/ Tony Collett
*Applicant's signature*

TFO Tony Collett, DEA
*Printed name and title*

Sworn to before me and: ☐ signed in my presence.

☑ submitted, attested to, and acknowledged by reliable electronic means.

Date: **01 Dec 2017**

*[signature]*
Nina Y. Wang   *Judge's signature*

City and state: Denver, Colorado

United States Magistrate Judge
*Printed name and title*

## **ATTACHMENT A**

This warrant authorizes the use of the electronic investigative technique described in Attachment B only when Jose Valenzuela-Vargas is present.

This warrant may be used at any location open, accessible and available to the public.

## **ATTACHMENT B**

This warrant authorizes the officers to whom it is directed to identify the Target Cellular Device by collecting:

1. radio, cellular and/or digital signals emitted by the Target Cellular Device and other telephones in its vicinity for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio, cellular and/or digital signals emitted by the Target Cellular Device and other telephones in its vicinity in response to signals sent by the officers;

for a period of thirty days, during all times of day and night.

Law enforcement will make no affirmative investigative use of any identifiers collected from cellular telephones other than the Target Cellular Devices absent further order of a court, except to identify the Target Cellular Devices and distinguish it from the other telephones. Once investigators ascertain the identity of the Target Cellular Devices, they will cease using the cell-site simulators.

This warrant does not authorize the interception of any telephone calls, text messages, or Internet data, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. See 18 U.S.C. § 3103a(b)(2).

As used herein, the "Target Cellular Device" is the cellular telephone or telephones carried by Jose Valenzuela-Vargas.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case Number:

IN THE MATTER OF USE OF A
CELL-SITE SIMULATOR TO IDENTITY
CELLULAR DEVICES IN THE
POSSESSION OF AND BEING USED
BY JOSE VALENZUELA-VARGAS

───────────────────────────────────────────────

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT
───────────────────────────────────────────────

I, Task Force Officer Tony Collett, being first duly sworn, hereby depose and state as follows:

1. Your affiant, Task Force Officer ("TFO") Tony L. Collett, is an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), and is authorized by law to conduct investigations, and make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. Your affiant submits this affidavit in support of an application for a search warrant under Rule 41 of the Federal Rule of Criminal Procedure to authorize law enforcement to employ an electronic investigative technique further described in Attachment B, in order to identify the cellular device or devices carried by JOSE VALENZUELA-VARGAS (the "Target Cellular Devices"), described in Attachment A.

**YOUR AFFIANT'S BACKGROUND AND TRAINING**

3. Your affiant has been employed as a police officer in Colorado since August 1999. Your affiant worked for the Lakewood Police Department from August 1999 until April 2014. Your affiant has worked as an investigator for the Colorado

Attorney General's Office since April 2014. From January 2004 to February 2009, your affiant was assigned to the West Metro Drug Task Force as a narcotics detective. From February 2009 to April 2014, your affiant was assigned to the Lakewood Police Department Special Enforcement Team / Gang Unit. In both of these previous assignments, your affiant's primary role was the proactive investigation of drug offenses.

      4.      In April 2014, your affiant was assigned as a Task Force Officer to the Denver Drug Enforcement Administration (DEA) Organized Crime Drug Enforcement Task Force (OCDETF) Strike Force, Denver Field Division. As a Task Force Officer of the Drug Enforcement Administration, your affiant is empowered to conduct investigations of, and to make arrests for, the narcotics offenses enumerated in Title 21, United States Code, Section 841. Your affiant has completed numerous specialized training courses in narcotics investigations, to include the DEA's basic and advanced drug investigations courses. Your affiant has been involved in numerous drug trafficking investigations and has authored and obtained dozens of court-ordered intercepts for wire, oral, and electronic communications. Your affiant has also participated in myriad other wiretap investigations. Your affiant's training and experience as a Task Force Officer/Narcotics Investigator includes, but is not limited to, conducting electronic and physical surveillance, interviewing informants and witnesses, writing affidavits, executing search warrants and arrest warrants, working undercover, recruiting and managing informants, conducting wiretap investigations, reviewing telephone records, and reviewing taped conversations. Your affiant is experienced in the means and methods used by people and drug trafficking organizations to communicate, purchase,

transport, store, and distribute drugs, as well as the means and methods used to conceal profits generated from those transactions. Your affiant is familiar with many commonly abused illegal drugs, including cocaine, heroin, methamphetamine, and marijuana, and is familiar with the appearance, common methods of use, packaging, and concealment for these drugs as well as slang terms frequently used to refer to these drugs.

5. This investigation was initiated in March, 2017, and your affiant has been involved in this investigation since its inception. As a result of the investigation, statements made to your affiant by other law enforcement personnel involved in this investigation, a review of reports of other agents, all of which your affiant believes to be reliable, your affiant is familiar with the facts and circumstances of this investigation and attests to all of the facts and information stated in each of the paragraphs herein.

6. The facts in this affidavit come from your affiant's: personal observations, training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. This Court has authority to issue the requested warrant under Federal Rule of Criminal Procedure Rule 41(b)(1) & (2) because the Target Cellular Devices are currently believed to be located inside the district. As explained below, wiretaps conducted in this investigation show that JOSE VALENZUELA-VARGAS, the user of the Target Cellular Devices, spends the majority of his time in the district of Colorado.

8. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 2, United States Code, Sections 841(a)(1) and 846 have

3

been, are being, and will continue to be committed by JOSE VALENZUELA-VARGAS. There is also probable cause to believe that the identification of the Target Cellular Devices will lead to evidence of those criminal violations. However, this evidence cannot be obtained unless law enforcement is able to actually identify the Target Cellular Devices.  There is probable cause to believe that the use of the investigative technique described by the warrant will result in law enforcement learning the identifying information of the Target Cellular Devices.

9. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device" under Title 18 U.S.C. §§ 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as with Rule 41. *See* 18 U.S.C. §§ 3121-3127. This warrant, therefore, includes all the information required to be included in a pen register order. *See* 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

### A. Background of Investigation

10. In January 2015, DEA TFO Kristie Allen, working for the Northern Colorado Drug Task Force, initiated an investigation into the cocaine distribution activities of the Acosta Drug Trafficking Organization. Between March 17, 2015, and June 3, 2015, law enforcement seized more than twenty-nine kilograms of cocaine and approximately $400,000 in drug proceeds. Title III intercepts and subsequent proffers showed that OMAR CHAVEZ-GUTIERREZ was the head of the Acosta DTO but was in jail from mid-March 2015 to the beginning of June 2015. During his incarceration,

4

members of CHAVEZ-GUTIERREZ' family ran the drug business. As a result, CHAVEZ-GUTIERREZ was not intercepted during or charged as part of the Acosta DTO.

11. In March 2017, TFO Kristie Allen initiated this current investigation into the drug trafficking activities of OMAR CHAVEZ-GUTIERREZ and his associates. This investigation has shown that CHAVEZ-GUTIERREZ is primarily a cocaine distributor in the Denver metro area. The evidence further shows that a male identified as CONEJO is a Mexico-based cocaine source of supply to: OMAR CHAVEZ-GUTIERREZ, co-conspirator ISMAEL VAZQUEZ-OLIVAS, and several other individuals in the Denver metro area. Intercepted communications on the telephone used by VAZQUEZ-OLIVAS indicate that VAZQUEZ-OLIVAS sells methamphetamine in addition to cocaine.

B. **Jose Valenzuela-Vargas' Pattern of Using Multiple Telephones and Changing Telephone Numbers**

(1) *Target Telephone Eleven*

12. On September 15, 2017, the Honorable Robert E. Blackburn, United States District Court, District of Colorado, authorized the initial interception of wire and electronic communications occurring to and from cellular telephone a T-Mobile telephone, assigned telephone number (720) 937-9383, IMSI number 310260416396127, subscribed to Angel Valenzuela, 462 Lowell Blvd., Denver, Colorado, 80204 ("TARGET TELEPHONE ELEVEN" or "TT-11"), which was in the possession of and being used by JOSE VALENZUELA-VARGAS.

13. On September 27, 2017, at 3:13 p.m., VALENZUELA-VARGAS received an incoming call (Call #1470) on TT-11 from UM-2165 using (760) 818-2165. UM-2165 said he needed "those three right now". VALENZUELA-VARGAS said "I'll call you back right now."

14. Your affiant believes that UM-2165 called VALENZUELA-VARGAS to arrange a drug purchase ("those three"). However, UM-2165 called VALENZUELA-VARGAS on a phone that VALENZUELA-VARGAS no longer wanted to use to conduct his trafficking business. Your affiant believes that VALENZUELA-VARGAS likely called UM-2165 back from another phone and that VALENZUELA-VARGAS carries and used multiple cellular phones in connection with drug trafficking,

15. On or about October 14, 2017, JOSE VALENZUELA-VARGAS stopped using TT-11 and agents stopped monitoring TT-11 on October 16, 2017, at 11:59 p.m.

   (2)   *Target Telephone Fourteen*

16. During the course of the investigation, intercepted communications showed that ZENAIDA LOPEZ was an El Paso-based drug transporter who delivered drugs to VALENZUELA-VARGAS on behalf of CONEJO.

17. On or about October 27, 2017, your affiant began receiving court authorized GPS location information for LOPEZ' phone. On Monday, October 30, 2017, GPS data indicated LOPEZ was traveling north from the El Paso area towards the Denver area. Investigators established physical surveillance and located LOPEZ traveling north on I-25 through Monument, Colorado. LOPEZ was traveling with in tandem with another vehicle driven by CRUZ RODRIGUEZ and later told investigators that RODRIGUEZ is her boyfriend. Based on other intercepted communications, your affiant believes that CRUZ RODRIGUEZ is a load coordinator who is involved in the transportation of narcotics.

18. On October 30, 2017, the Honorable Robert E. Blackburn, United States District Court, District of Colorado, authorized the initial interception and recording of

wire and electronic communications and the initial interception of GPS information occurring to and from a Verizon cellular telephone assigned telephone number (720) 400-3910, IMSI number 311480351847400, subscribed to "John Doeh" and without an address on the account ("TARGET TELEPHONE FOURTEEN" or "TT-14"), which was also in the possession of and being used by JOSE VALENZUELA-VARGAS.

19. On October 31, 2017, at 5:42 p.m., VALENZUELA-VARGAS placed an outgoing call (Call #1) on TT-14 to ZENAIDA LOPEZ using (915) 258-2297 and asked where she was. LOPEZ indicated she was at Yale Avenue about five minutes away.

20. At 5:54 p.m., VALENZUELA-VARGAS received an incoming call (Call #2) on TT-14 from LOPEZ who indicated she was there and asked if VALENZUELA-VARGAS wanted her to go upstairs. VALENZUELA-VARGAS confirmed.

21. At 8:06 p.m., VALENZUELA-VARGAS received an incoming call (Call #6) on TT-14 from ZENAIDA LOPEZ who advised she counted the money and there was only $22,543. VALENZUELA-VARGAS expressed disbelief. LOPEZ replied that the bundles that were in hundreds "had singles in it" and the bundles that "were in twenties had some tens in it." LOPEZ noted that it was 2,000 short and they would "beat her" if she came back with that amount. VALENZUELA-VARGAS said he would call the guy and see what the deal was because the guy was "always straight" with him. LOPEZ repeated that they took the money out of the bags, counted it all, and there was only $22,543.

22. Your affiant believes that ZENAIDA LOPEZ likely delivered drugs to and then collected money from VALENZUELA-VARGAS. ZENAIDA LOPEZ told VALENZUELA-VARGAS that his payment was $2,000 short and there were singles

7

mixed in with $100 dollar bills and $10 bills mixed in with $20 dollar bills.

23. At 8:14 p.m., LOPEZ followed up with an SMS message to VALENZUELA-VARGAS (Call #8) which stated "that was everything, I'm here with CRUZ at his house." VALENZUELA-VARGAS responded "I already called him . . . everything was there." LOPEZ replied "That was everything, he already saw that there were some singles and tens as well." VALENZUELA-VARGAS replied "No, well the guy always gives it whole/complete."

24. Your affiant believes ZENAIDA LOPEZ advised VALENZUELA-VARGAS that she was with CRUZ RODRIGUEZ and the payment was, in fact, correct and not short.

25. Later that evening at 9:45 p.m., VALENZUELA-VARGAS received an incoming call (Call #21) on TT-14 from ZENAIDA LOPEZ using (915) 258-2297 who explained that they were mad at her for not counting it in front of VALENZUELA-VARGAS. LOPEZ added it wasn't "even 23,000, it was $22,543 and 2,500 short." LOPEZ explained she was paid $1,000 "to cross it" and $1,000 "to bring it" and she paid $500 in expenses so it wasn't even going to be worth it. VALENZUELA-VARGAS told her that the guy had been waiting for them outside and he even asked the guy if it was short, which the guy said it was not. LOPEZ explained that there were three bundles of hundreds and three bundles of singles. VALENZUELA-VARGAS acknowledged and advised the next time "we need to open it up and count it all."

26. On November 1, 2017, around 4:15 p.m., GPS data for ZENAIDA LOPEZ' phone showed that she arrived in Denver during the evening of October 30, 2017, left Denver on November 1, 2017, and began driving south. Investigators established

physical surveillance on LOPEZ who was driving a 2008 black Saturn Vue bearing Chihuahua plate 993SBD9. Your affiant requested Pueblo PD K9 Detective Vince Petkosek stop the vehicle if he found probable cause to do so.

27. At approximately 5:09 p.m., Pueblo PD detectives established physical surveillance on LOPEZ' vehicle near mile marker 110 and followed it to a gas station at Exit 102. LOPEZ remained at the gas station for a few minutes and then resumed traveling southbound on I-25. At approximately 5:30 p.m., Detective Petkosek and his partner PPD Detective Danny Garcia observed a moving violation and stopped the vehicle. The driver was identified as ZENAIDA LOPEZ and she gave consent to search the car. LOPEZ told officers that she had $72,000 in her duffle bag/backpack which came from her daughter winning the lottery three years ago. During the consent search, $72,993 was located in her duffle bag. The majority of the money was rubber banded but loose in her duffle bag and a smaller portion was in a white plastic grocery type bag.

28. On November 1, 2017, your affiant and TFO Tony Collett conducted an interview of ZENAIDA LOPEZ who admitted that the money was drug proceeds. LOPEZ advised that, on October 31, 2017, she picked up approximately $22,000, which was in a white plastic bag in her duffle bag. LOPEZ further states this money was from "Angel" (VALENZUELA-VARGAS) and she picked up the money from VALENZUELA-VARGAS at his apartment located at 817 S. Vance St, Lakewood, Colorado

C. **Investigators Learn that Valenzuela-Vargas Possesses One Other Telephone Used in Connection with Drug Trafficking**

29. During the course of the investigation, an individual identified as PAOLA PEREA as one of VALENZUELA-VARGAS' drug associates.

9

30. On November 9, 2017, at 4:08 p.m., VALENZUELA-VARGAS received an incoming SMS message (Call #126) on TT-14 from PAOLA PEREA using (720) 301-9321n which read "Do you still have the other number or not?" At 4:08 p.m., PAOLA sent another SMS message (Call #130) to TT-14 that read, "I sent you that one to the other one."

31. Based on other intercepted conversations over TT-14 between VALENZUELA-VARGAS and PEREA, your affiant believes PEREA was advising VALENZUELA-VARGAS that she had sent him a picture ("that one") to his other phone ("the other one"). From previous conversations, your affiant knows that the two had discussed VALENZUELA-VARGAS needing to see pictures of narcotics prior to discussing his purchase of the narcotics. This picture was not sent to TT-14. Therefore, your affiant believes this is another example JOSE VALENZUELA-VARGAS using multiple cellular phones at the same time in furtherance of to conduct his illegal drug trafficking business.

32. Based on the foregoing information your affiant submits there is probable cause to believe that JOSE VALENZUELA-VARGAS possesses and uses multiple cellular devices to compartmentalize his drug trafficking activity and avoid law enforcement scrutiny. Your affiant believes that, the collection of cellular telephone identifying information, for a period of time not to exceed thirty (30) days, in the vicinity of locations used by JOSE VALENZUELA-VARGAS, at times when VALENZUELA-VARGAS is present at those locations, will assist law enforcement personnel in identifying the Target Cellular Devices being used by JOSE VALENZUELA-VARGAS provide an opportunity to further exploit those newly identified investigative avenues.

10

## MANNER OF EXECUTION

33.     As a result of your affiant's training and experience, your affiant has learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications.  When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication.  These signals include a cellular device's unique identifiers.

34.     To facilitate execution of this warrant, law enforcement may use an investigative device that sends signals to nearby cellular devices, including the Target Cellular Devices, and in reply, the nearby cellular devices will broadcast signals that include their unique identifiers. The investigative device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell to communicate with others.

35.     Law enforcement will use this investigative device when they have reason to believe JOSE VALENZUELA-VARGAS is present.  Law enforcement will collect the identifiers emitted by cellular devices in the immediate vicinity of the Target Cellular Devices when the subject is in multiple locations and/or multiple times at a common location and use this information to identify the Target Cellular Devices carried by JOSE VALENZUELA-VARGAS, as only the Target Cellular Devices' unique identifiers will be present in all or nearly all locations. Once investigators ascertain the identity of the Target Cellular Devices, they will cease using the investigative technique. As there is probable cause to determine the identity of the Target Cellular Devices, there is probable cause to use the investigative techniques described by the warrant.

36.     The investigative device may interrupt cellular service of cellular devices within its immediate vicinity.  Any service disruption will be brief and temporary, and all operations will attempt to limit the interference cellular devices.  Once law enforcement has identified the Target Cellular Devices, it will delete all information concerning non-targeted cellular devices.  Absent further order of the court, law enforcement will make no investigative use of information concerning non-targeted cellular devices other than distinguishing the Target Cellular Devices from all other devices.

## AUTHORIZATION REQUEST

37.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41.  The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

38.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the person carrying the Target Cellular Devices) would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  See 18 U.S.C. § 3103a(b)(1).   There is reasonable necessity for the use of the technique described above, for the reasons set forth above.  See 18 U.S.C. § 3103a(b)(2).

39. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to identify the Target Cellular Devices outside of daytime hours.

40. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be restricted until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to restrict these documents because their premature disclosure may seriously jeopardize that investigation.

41. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

                                          Respectfully submitted,

                                          S/<u>Tony Collett</u>
                                          Tony Collett
                                          Task Force Officer
                                          Drug Enforcement Administration

Submitted, attested to, and acknowledged by reliable electronic means on December __1__, 2017.

_____
NINA Y. WANG, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO